

SO ORDERED,

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: May 6, 2016**

**The Order of the Court is set forth below. The docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

**MICHAEL WINSTON BOYKIN,**                         **CASE NO. 15-01744-NPO**

**DEBTOR.**                                                              **CHAPTER 7**

**MICHAEL WINSTON BOYKIN**                                   **PLAINTIFF**

**VS.**                                                **ADV. PROC. NO. 15-00052-NPO**

**MISSISSIPPI DEPARTMENT OF REVENUE**                        **DEFENDANT**

### MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART MDOR'S
### MOTION FOR SUMMARY JUDGMENT AND *SUA SPONTE*
### GRANTING IN PART SUMMARY JUDGMENT FOR THE DEBTOR

There came on for consideration the Motion for Summary Judgment (the "Summary Judgment Motion") (Adv. Dkt. 22)[1] filed by the Mississippi Department of Revenue[2] (the "MDOR"); the Brief in Support of Motion for Summary Judgment ("MDOR's Brief") (Adv. Dkt. 23) filed by the MDOR; the Response in Opposition to Defendant's Motion for Summary

---

[1] Citations to the record are as follows:  (1) citations to docket entries in the above-referenced adversary proceeding (the "Adversary") are cited as "(Adv. Dkt. _____)" and (2) citations to docket entries in the above-styled bankruptcy case (the "Bankruptcy Case") are cited as "(Bankr. Dkt. _____)".

[2] In 2010, the Mississippi State Tax Commission was renamed the Mississippi Department of Revenue.  MISS. CODE ANN. § 27-3-4.  For the sake of consistency and clarity, this Opinion refers only to the Mississippi Department of Revenue although some of the relevant events occurred prior to 2010.

Judgment (the "Response") (Adv. Dkt. 26) filed by the debtor, Michael Winston Boykin (the "Debtor"); the Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Debtor's Brief") (Adv. Dkt. 27) filed by the Debtor; and the Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment ("MDOR's Reply Brief") (Adv. Dkt. 28) filed by the MDOR in the Adversary.  The MDOR attached to the MDOR's Brief five (5) exhibits marked as Exhibits "A" through "E" (Adv. Dkt. 23-1 at 1-41), consisting of the Debtor's individual income tax returns for the tax years 2007-2011.  Included in each of these five (5) exhibits is an assessment notice for the corresponding tax years. (*Id*.).  The MDOR also attached an assessment notice for the 2012 tax year, marked as Exhibit "F."  (Adv. Dkt. 23-1 at 42-43). Additionally, the MDOR attached:  (1) the Audit Assessment notice dated January 5, 2015 (the "Audit Assessment"), covering the tax years 2009-2011, marked as Exhibit "G" (Adv. Dkt. 23-1 at 44-46) and (2) the indictment dated August 28, 2015 (the "Indictment") and Judgment of Conviction and Sentence Instanter (the "Judgment of Conviction") filed November 17, 2015, identified in the MDOR Brief as collective Exhibit "H" (Adv. Dkt. 23-2) but not marked with an exhibit sticker as such.  To the MDOR's Reply Brief, the MDOR attached "Composite Exhibit A" (Adv. Dkt. 28-1), consisting of the Affidavit of Lorenzo Gooch (the "Gooch Affidavit") (Adv. Dkt. 28-1 at 1-3), copies of the federal Examination Operational Automation Database ("EOAD") Taxpayer Reports for the tax periods 2009-2011 (Adv. Dkt. 28-1 at 4-7), and notices of additional taxes due issued to the Debtor for the corresponding tax periods (Adv. Dkt. 28-1 at 8-11).  The Debtor attached the "Account Transcript" of the Internal Revenue Service ("IRS") for the 2007-2012 tax years, marked as collective Exhibit "1" to the Debtor's Brief.  (Adv. Dkt.

27-1).[3]

## Jurisdiction

The Court has jurisdiction of the parties to and the subject matter of the Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Notice of the Summary Judgment Motion was proper under the circumstances.

## Facts[4]

1.      The Debtor filed a voluntary petition for relief (the "Petition") (Bankr. Dkt. 1) under chapter 7 of the Bankruptcy Code on June 1, 2015 (the "Petition Date"). In his bankruptcy schedules, the Debtor listed MDOR as a creditor having an unsecured priority claim of $103,083.61. (Bankr. Dkt. 3 at 10).

2.      On August 10, 2015, the Debtor initiated the Adversary by filing the Complaint to Determine Dischargeability (the "Complaint") (Adv. Dkt. 1) against MDOR. In the Complaint, the Debtor alleges that he owes MDOR individual income taxes of $103,744.29, inclusive of penalties and interest, for the tax years 2007-2012. (Compl. ¶ 5). He further alleges that these taxes are dischargeable in the Bankruptcy Case because "[s]aid taxes are more than three (3) years old, have not been assessed within the last 180 days[,] and tax returns were filed more than a year prior to the bankruptcy filing." (*Id*.). The Debtor contends in the Complaint that the

---

[3] In this Opinion, MDOR's Exhibits "A" through "H" are referred to as "(MDOR's Ex. ____)" and MDOR's Composite Exhibit A is referred to by docket number. The Debtor's one (1) collective exhibit is referred to as "(Debtor's Ex. 1)".

[4] The following findings of fact and conclusions of law are made pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

delinquent taxes are dischargeable pursuant to 11 U.S.C. § 523[5] and "other applicable sections of the Bankruptcy Code." (Compl. ¶ 6).

3.       The MDOR filed an untitled response[6] to the Complaint (the "Answer") (Adv. Dkt. 9) on October 1, 2015. In the Answer and the MDOR's Brief, the MDOR asserts that the individual income taxes are excepted from discharge pursuant to § 523(a)(1)(A)-(C) and § 507(a)(8) because: (1) the required tax returns were not filed or given by April 15th[7] and no extension was filed with the MDOR on behalf of the Debtor; (2) the Debtor willfully attempted to defeat or evade such taxes; and (3) the tax debt for the tax years 2009-2012 qualify for eighth priority treatment under § 507(a)(8)(A). (Answer at 1-2; MDOR's Br. at 2-3).

**Filing Dates of State Individual Income Tax Returns**

4.       For the 2007-2009 tax years, the Debtor filed state individual income tax returns after April 15th on or about the dates shown in the chart below:

| | |
|---|---|
| 2007 Individual Income Tax Return[8] | 10/09/2008 |
| 2008 Individual Income Tax Return[9] | 10/12/2009 |
| 2009 Individual Income Tax Return[10] | 10/15/2010 |

---

[5] From this point forward, all code sections refer to the Bankruptcy Code found at title 11 of the U.S. Code unless otherwise noted.

[6] *See* MISS. BANKR. L.R. 5005-1(a)(2)(I) (requiring all pleadings, motions, and other papers presented to the clerk for filing to contain clear designations of their content).

[7] For taxable years prior to January 1, 2016, income tax returns must be filed on or before the 15th day of the fourth month following the close of the fiscal year. MISS. CODE ANN. § 27-7-41. If the last day falls on a Saturday, Sunday, or legal holiday, the filing is considered timely if performed on the next business day. *Id.*

[8] (MDOR's EX. A-2).

[9] (MDOR's EX. B-2).

5.      For the 2010-2011 tax years, the Debtor electronically filed his  individual income tax returns (MDOR's Br. at 2; MDOR Exs. D-2 & E-2), but there are no dates on the returns indicating when he did so.  According to the MDOR, the 2010 and 2011 Individual Income Tax Returns were "processed" after April 15th on the following dates:

| 2010 Individual Income Tax Return | 10/18/2011 |
|---|---|
| 2011 Individual Income Tax Return[11] | 10/18/2012 |

(MDOR's Br. at 2-3).

6.      For the 2012 tax year, the Debtor filed his individual income tax return with the MDOR on October 15, 2013.  (Debtor's Br. at 3; MDOR's Br. at 3).

7.      For the 2007-2012 tax years, the Debtor alleges in his Response that he obtained an extension to file his federal individual income tax returns with the IRS.  (Resp. at 2; Debtor's Ex. 1).

---

[10] (MDOR's Ex. C-2).

[11] In the MDOR's Brief, the MDOR asserts that the 2011 Individual Income Tax Return was submitted electronically and processed on or about October 18, 20_08_, not October 18, 20_12_, but this is obviously a scrivener's error.  (MDOR's Br. at 2-3).  Indeed, the Debtor alleges in the Debtor's Brief that the date is October 18, 20_12_ and cites the MDOR's Brief without further comment.  (Debtor's Br. at 3).  There is another scrivener's error in the same paragraph of the MDOR's Brief where the MDOR refers once to the 20_11_ Individual Income Tax Return as the 20_12_ Individual Income Tax Return.  (MDOR's Br. at 2).

**MDOR Assessments**

8.      Assessments[12] were issued by the MDOR for the tax years 2007-2012 on the dates and in the amounts shown below:

| Tax Period | Date of Assessment | Amount |
|:---:|:---:|:---:|
| 2007 | 02/18/2009 Assessment[13] | $19,080.00 |
| 2008 | 02/23/2010 Assessment[14] | $14,168.00 |
| 2009 | 12/09/2010 Assessment[15] | $6,072.00 |
| 2010 | 11/29/2011 Assessment[16] | $4,946.00 |
| 2011 | 12/20/2012 Assessment[17] | $4,276.98 |
| 2012 | 11/20/2013 Assessment[18] | $10,891.96 |

Miss. Code Ann. § 27-7-49(4).

9.      The MDOR issued the Audit Assessment on January 5, 2015, indicating that the Debtor had been assessed additional income taxes of $22,217.00, including interest and penalties, for the 2009-2011 tax years.  (MDOR's Ex. G)  This amount was in addition to the previously assessed liabilities of $12,770.15 for the same tax periods, for a total balance due of

---

[12] The MDOR can make an assessment of additional tax due if the amount of the tax paid is less than the correct amount due.  Miss. Code Ann. § 27-7-51.

[13] (MDOR's Ex. A-1).

[14] (MDOR's Ex. B-1).

[15] (MDOR's Ex. C-1).

[16] (MDOR's Ex. D-1).

[17] (MDOR's Ex. E-1).

[18] (MDOR's Ex. F).

$34,987.15.  (*Id.*).   According to the Debtor, he appealed the Audit Assessment to MDOR's Review Board, and a hearing is scheduled to take place on December 6, 2016.[19]  (Debtor's Br. at 4); *see* MISS. CODE ANN. § 27-77-5(1).

**State Criminal Proceedings**

10.     The Madison County Grand Jury Debtor indicted the Debtor during the July, 2015 term for two counts of tax evasion for the 2010-2011 tax years in violation of MISS. CODE ANN. § 27-3-79. (MDOR's Ex. H).

11.     The Debtor pled guilty to the crime of tax evasion as outlined in the Indictment, and the Judgment of Conviction was entered on November 17, 2015.  (MDOR's Ex. H).  The Debtor was sentenced to five (5) years in prison but the sentence was suspended and the Debtor was placed on supervised probation for five (5) years.  (*Id.*).  He was ordered to pay restitution of $7,774.00 at a rate of $150.00 month beginning November 2015.  (*Id.*).

12.     In the Bankruptcy Case, the Debtor received a discharge of all debts that arose before the filing of the Petition, "[e]xcept as provided in section 523 of this title."  11 U.S.C. § 727(b); (Bankr. Dkt. 26).

13.     In the Summary Judgment Motion, the MDOR contends that there are no genuine issues of material fact, that the 2007-2012 income taxes are non-dischargeable under § 523 and § 507(a)(8), and that MDOR is entitled to a judgment dismissing the Complaint with prejudice. With respect to the 2007-2008 income taxes, the MDOR asserts that the Debtor filed his individual income tax returns late.  As to the 2009-2011 income taxes, the MDOR maintains that the Debtor was issued the Audit Assessment on January 5, 2015, which is less than 240 days

---

[19]  The Debtor does not raise the finality of the Audit Assessment as an issue in this matter.  Even if the Debtor prevails in his appeal to MDOR's Review Board or in any further appeal, his tax liabilities for the 2009-2011 tax years will not be eliminated entirely.

before the Petition Date.  As an alternative ground for the non-dischargeability of the 2010-2011 income taxes, the MDOR alleges in the MDOR's Brief that the Debtor pled guilty to and was convicted of tax evasion for those tax years.  Finally, with respect to the 2012 income taxes, the MDOR contends that the 2012 individual income tax return was due on April 15, 2013, which is less than three (3) years before the Petition Date.  In the Response, the Debtor asserts that the Summary Judgment Motion is premature because he obtained extensions for filing his federal individual income tax returns for the tax years 2007-2012 with the IRS, and, therefore, there is a genuine dispute as to whether his state individual income tax returns for those tax years were filed timely.  Moreover, the Debtor alleges in the Debtor's Brief that a genuine issue of material fact exists as to whether the Audit Assessment was derived from information obtained from the IRS, and, thus, fell within the exception to the three-year limitations period under MISS. CODE ANN. § 27-7-49(4).

## Discussion

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure, as made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides in relevant part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Summary Judgment is looked upon as an important process through which parties can obtain a "just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations & quotation omitted).  Summary judgment is properly entered when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" show

that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c)(1)(A); *see also Celotex*, 477 U.S. at 322.

The initial burden of proof is on the movant to specify the basis upon which summary judgment should be granted and identify portions of the record that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1); *see also Celotex*, 477 U.S. at 322. Once the initial burden is met, the burden of production shifts to the nonmovant who then must rebut the presumption by coming forward with specific facts, supported by the evidence in the record, upon which a reasonable factfinder could find a genuine fact issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[C]onclusory allegations" or "unsubstantiated assertions" in pleadings do not satisfy the nonmovant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Summary judgment should be granted where the nonmovant "has failed to make a sufficient showing on an essential element of [the] case with respect to which [the party] has the burden of proof." *Celotex*, 477 U.S. at 323.

In the absence of proof by the nonmovant, courts will not assume that the nonmovant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the [bankruptcy] court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Courts are permitted to enter summary judgment *sua sponte* against a nonmovant when that party was on notice. *See* FED. R. CIV. P. 56(f); *see Celotex*, 477 U.S. at 326 (stating that "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her

evidence"). The Fifth Circuit Court of Appeals has noted that by filing a motion for summary judgment, the movant opens the door to allow the district court to grant summary judgment in favor of the nonmovant *sua sponte* "provided adequate warning and other summary judgment requirements" are met. *British Caledonian Airways Ltd. v. First State Bank of Bedford*, 819 F.2d 593, 595 (5th Cir. 1987).

## B.   Dischargeability

Section 523 excepts certain debts from § 727's grant of discharge. Section 523(a)(1) provides that a discharge under § 727 does not discharge an individual from any debt for a tax—

> (A)   of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;
>
> (B)   with respect to which a return, or equivalent report or notice, if required—
>
> > (i)   was not filed or given; or
> >
> > (ii)   was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or
>
> (C)   with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax . . . .

11 U.S.C. § 523(a)(1). As the party seeking an exception to discharge, the MDOR bears the burden of proving by a preponderance of the evidence that the tax debts for 2007-2012 are non-dischargeable in the Bankruptcy Case. *Hartford Cas. Ins. v. Fields (In re Fields)*, 926 F.2d 501, 503 (5th Cir. 1991).

## 1.   Taxes Entitled to Priority: § 523(a)(1)(A) & § 507(a)(8)(A)

Under § 523(a)(1)(A), an individual debtor is not discharged from any debt of a kind specified in § 507(a)(8). 11 U.S.C. § 523(a)(1)(A). Section 507(a)(8)(A), in turn, establishes the

priority of certain tax claims of governmental units[20] in the distribution of a debtor's assets.[21]  11

U.S.C. § 507(a)(8)(A).  Section 507(a)(8)(A) gives eighth priority to those income taxes:

>    (i)      for which a return, if required, is last due, including extensions, after three
>    years before the date of the filing of the petition;
>
>    (ii)      assessed within 240 days before the date of the filing of the petition,
>    exclusive of—
>
>         (I)      any time during which an offer in compromise with respect to that
>    tax was pending or in effect during that 240-day period, plus 30 days; and
>
>         (II)      any time during which  a stay of proceedings against collections
>    was in effect in a prior case under this title during that 240-day period, plus 90
>    days; or
>
>    (iii)      other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C)
>    of this title, not assessed before, but assessable, under applicable law or by
>    agreement, after, the commencement of the case . . . .

11 U.S.C. § 507(a)(8)(A)(i)-(iii).   Income taxes that fall within § 507(a)(8)(A) are afforded

priority status based on the age of the tax liability.   The purpose of § 523(a)(1)(A) and

§ 507(a)(8)(A) is to render certain pre-petition tax claims non-dischargeable and certain old or

"stale" tax claims dischargeable.   Each subsection of § 507(a)(8)(A)(i)-(ii) provides an

independent basis for priority tax treatment, so a tax claim need only fall into one of the three

categories to receive eighth priority treatment.  *Hosack v. IRS (In re Hosack)*, 282 F. App'x 309,

315 (5th Cir. 2008).  Here, the MDOR relies on romanettes (i) and (ii) of § 507(a)(8)(A), known

as the "three-year rule" and the "240-day rule," for its contention that the 2009-2012 taxes are

not dischargeable as a matter of law.

---

[20] A governmental unit is defined in the Code to include state taxing authorities.   11 U.S.C. § 101(27).

[21] Section 507(a) establishes ten (10) categories of expenses and claims, listed in descending order, that are entitled to priority payment.   11 U.S.C. § 507(a)(1)-(10).

### a.    Three-Year Rule: § 507(a)(8)(A)(i)

Because the Debtor's income tax return for the 2012 tax year was due on April 15, 2013, which is less than three (3) years before the Petition Date, the MDOR asserts that the 2012 tax debt falls inside the three-year window under § 507(a)(8)(A)(i).  Thus, according to the MDOR, the 2012 tax debt is a priority debt under § 507(a)(8)(A)(i) and is non-dischargeable pursuant to § 523(a)(1)(A).

The MDOR's assertion does not account for the extension obtained by the Debtor from the IRS for filing the 2012 tax return until October 15, 2013.  The Court finds that the operative date for the three-year lookback period is October 15, 2013, not April 15, 2013, as alleged by the MDOR.  The Court nevertheless agrees with the MDOR that the 2012 tax return, even with a due date of October 15, 2013, falls within the three-year rule and that the 2012 tax debt is entitled to priority under § 507(a)(8)(A)(i).  The Court, therefore, concludes that the MDOR is entitled to a summary judgment that the 2012 tax debt is non-dischargeable under § 523(a)(1)(A).

### b.    240-Day Rule: § 507(a)(8)(A)(ii)

The MDOR alleges that taxes for the 2009-2011 tax years were assessed on January 5, 2015, which is within 240 days of the Petition Date.  The MDOR, therefore, asserts that the tax liabilities are entitled to priority under § 507(a)(8)(A)(ii) and are non-dischargeable under § 523(a)(1)(A).

The Debtor does not dispute the "timeline of events" outlined by the MDOR but argues that a genuine issue of material fact exists as to the "validity" of the Audit Assessment. (Debtor's Br. at 9).  In Mississippi, an assessment of income tax owed generally must be made within three (3) years from the due date of the return or the date the return was filed, whichever is later.  Miss. Code Ann. § 27-7-49(1).  The Debtor asserts that the Audit Assessment was

issued outside of this three-year general limitations period "for at least some of the [tax] periods in question." (Debtor's Br. at 10).

There is an exception to the general three-year limitations period in MISS. CODE ANN. § 27-7-49(1) "[w]here the reported taxable income of a taxpayer has been increased or decreased by the [IRS]." MISS. CODE ANN. § 27-7-49(4). In that event, the MDOR may make an assessment within three (3) years "from the date the [IRS] disposes of the tax liability in question." *Id.*; *see Buffington v. Miss. State Tax Comm'n*, 43 So. 3d 450, 454-55 (Miss. 2010) (holding that the IRS "disposes of the tax liability" for purposes of MISS. CODE ANN. § 27-7-49(1) on the date the Mississippi State Tax Commission receives federal Form 3210, which informs it that the IRS has increased a taxpayer's report income for a particular year). The Debtor acknowledges that the Audit Assessment itself states that "[i]nformation for this tax audit may have been obtained from the [IRS]," thus suggesting that the exception in MISS. CODE ANN. § 27-7-49(4) applies. The Debtor contends, however, that a fact issue remains with regard to the dischargeability of the 2009-2011 tax periods "if the Audit Assessment was issued without authority of law." (Debtor's Br. at 10). In other words, the Debtor questions whether the Audit Assessment was issued after the limitations period imposed by MISS. CODE ANN. § 27-7-49(1) had expired. The Debtor presented no summary judgment evidence indicating that the Audit Assessment was not the result of information obtained from the IRS about an increase in the Debtor's reported taxable income.

The MDOR alleges that the Audit Assessment was valid and issued within the limitations period, as evidenced by the testimony of Lorenzo Gooch ("Gooch") in the Gooch Affidavit. Gooch, a tax auditor/accountant with the MDOR, testified that he issued the Audit Assessment after determining that the Debtor had not reported adjustments to "Schedule C" and adjustments

to gross receipts made by the IRS for the 2009-2011 tax years. (Gooch Aff. ¶¶ 5-8). These adjustments are reflected in the EOAD Taxpayer Reports prepared by an IRS auditor and attached to the Gooch Affidavit. (Adv. Dkt. 28-1 at 4-7).

The arguments of the Debtor and the MDOR assume that an assessment must be "valid" under state law to qualify as such for purposes of § 507(a)(8)(A)(ii). The Fifth Circuit, however, held in *Louisiana Department of Revenue & Taxation v. Lewis (In re Lewis)*, 199 F.3d 249 (5th Cir. 2000), that the meaning of "assessed" under § 507(a)(8)(A)(ii) is a mixed question of federal and state law. *Id*. at 252. Although the analysis entails an examination of the legal rights and procedures afforded by state law, the ultimate question is whether those state rights created circumstances that § 507(a)(8)(A)(ii) recognizes as an assessment. *Id*.

In *Lewis*, the Louisiana Department of Revenue and Taxation (the "LDR") did not follow the correct statutory protocol under state law when it assessed a chapter 7 debtor's income tax liability. *Lewis*, 199 F.3d at 254. If the LDR had followed the correct procedure, the taxes would have been assessed outside the 240-day period specified in § 507(a)(8)(A)(ii), but because the LDR followed an incorrect procedure that gave the debtor greater rights than he was entitled to receive, the assessment fell within the 240-day period. *Lewis*, 199 F.3d at 254-55. The Fifth Circuit held that the procedure actually followed by the LDR determined the assessment date and, thus, concluded that the debtor's unpaid taxes were non-dischargeable because the assessment became final within the 240-day window of non-dischargeability.[22] *Id.* at 255. Applying *Lewis* to the present matter, the Court finds that the alleged "validity" of the Audit

_____

[22] In *Lewis*, the Fifth Circuit held that the touchstone of a § 507(a)(8)(A)(ii) assessment is finality. *Lewis*, 199 F.3d at 253. As noted previously, the Debtor did not raise the finality of the Audit Assessment as an issue in this matter. *See supra* note 19.

Assessment is not necessarily dispositive of the dischargeability issue under § 507(a)(8)(A)(ii) and § 523(a)(1).

The Debtor does not specify the 2009-2011 tax periods for which he alleges that the Audit Assessment was untimely but states only that the Audit Assessment is invalid "for at least some of the [tax] periods in question." (Debtor's Br. at 10). As to the 2011 taxes, the Court finds that there is no dispute that the January 5, 2015, Audit Assessment was made within the earlier statute of limitations period, MISS. CODE ANN. § 27-7-49(1), in that it was made within three (3) years of the date the Debtor filed the 2011 individual tax return in October, 2012. Thus, assuming for the sake of argument that an assessment must be made within the limitations period under Mississippi law in order to qualify as an "assessment" for purposes of § 507(a)(8)(A)(ii), there is no genuine issue of material fact that the Audit Assessment as to the 2011 tax liability was valid and made within 240 days of the Petition. Accordingly, the Court finds that the MDOR is entitled to summary judgment that the 2011 tax debt is non-dischargeable.

As to the 2009-2010 tax debts, the Court also finds that there is no genuine issue of material fact that the Audit Assessment was based on information received from the IRS of an increase in the Debtor's taxable income and, thus, was valid and timely under Mississippi law. The Debtor provided no summary judgment evidence disputing the affidavit testimony of Gooch. The Court, therefore, concludes that the MDOR is entitled to a summary judgment that the 2009-2010 tax debts are non-dischargeable.

## 2.    Late-Filed Returns:  § 523(a)(1)(B)

Because the Debtor allegedly filed his 2007-2008 individual income tax returns late, the MDOR contends that the 2007-2008 tax debts are non-dischargeable under § 523(a)(1)(B). As

to the 2007-2008 tax debts, this is the sole ground for non-dischargeability asserted by the MDOR.

Section 523(a)(1)(B) does not allow discharge of taxes for which a return was not filed or given, or was filed late and within two (2) years of the bankruptcy petition. 11 U.S.C. § 523(a)(1)(B).  Before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act (the "BAPCPA"), the Bankruptcy Code did not define the term "return."  In 2005, BAPCPA added a new unnumbered paragraph to the end of § 523(a)(19), which defines a "return" as follows:

> For purpose of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements).  Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a)(*).  Based on this definition, the Fifth Circuit held in *McCoy v. Miss. State Tax Comm'n (In re McCoy)*, 666 F.3d 924, 932 (5th Cir. 2012), that a tax return filed after the deadline does not qualify as a "return" for purposes of dischargeability.  "Unless it is filed under a 'safe harbor' provision similar to § 6020(a), a state income tax return that is filed late under the applicable nonbankruptcy state law is not a 'return' for bankruptcy discharge purposes under § 523(a)."  *McCoy*, 666 F.3d. at 932.

As noted previously, the Debtor filed his 2007-2008 individual income tax returns with the MDOR on October 9, 2008, and October 12, 2009, respectively, which is well after the April 15th due date for filing individual income tax returns in Mississippi.  Miss. Code Ann. § 27-7-41.  It is undisputed that the Debtor did not obtain an extension of the due date for filing his state income tax returns *with the MDOR*.  *See* Miss. Code Ann. § 27-7-50.  Even so, the Debtor

maintains that there is a genuine issue of material fact as to whether the state income tax returns were filed timely because he obtained an extension of the April 15th due date for filing his federal income tax returns *with the IRS*.  (Debtor's Br. at 8).  The Debtor attached to the Debtor's Brief the IRS's Account Transcripts for the tax years in question showing that the IRS granted him an extension to file his 2007 federal income tax return until January 28, 2009, and an extension to file his 2008 federal income tax return until October 15, 2009.  (Debtor's Ex. 1 at 2 & 9).  Mississippi accepts a filing extension granted by the IRS as an extension for filing a state income tax return under certain circumstances.[23]  *See* MISS. CODE ANN. § 27-7-50; MISS. ADMIN. CODE § 35.III.I.II.101.

In support of his argument, the Debtor cited *Atkinson v. Mississippi State Tax Commission (In re Atkinson)*, No. 11-01081-DWH, 2011 WL 7098046 (Bankr. N.D. Miss. Dec. 19, 2011), where the bankruptcy court denied a motion for summary judgment because of a factual dispute about the timeliness of the debtors' state income tax return.  *Id*. at, *2-3.  Although the debtors in *Atkinson* submitted evidence that the IRS granted them an extension to file their federal income tax return, the MDOR presented affidavit testimony that a corresponding extension for filing a state income tax return was not automatically granted to a taxpayer but was in the Commissioner's discretion.  *Id*. at, *1-2, 4.  This conflicting evidence

---

[23]  Under MISS. CODE ANN. § 27-7-50, "[t]he commissioner may, in his discretion, automatically recognize extensions of time authorized and granted by the Internal Revenue Service for the filing of tax returns."  *Id*.  Regulations promulgated by the MDOR regarding extensions provide:

> If no tax liability exists on the due date of the return, the Commissioner will automatically recognize an extension of time authorized and granted by the Internal Revenue Service for the filing of annual income tax returns.  Proof of the authorized extension must be maintained with the taxpayer's records.  If proof cannot be presented upon request, extension may not be allowed.

MISS. ADMIN. CODE § 35.III.I.II.101.

was sufficient to defeat the summary judgment motion of the MDOR in *Atkinson*, in part, because of the discretionary language in M<small>ISS</small>. C<small>ODE</small> A<small>NN</small>. § 27-7-50.  *Atkinson*, 2011 WL 7098046, at \*4.

Unlike in *Atkinson*, the MDOR here does not dispute whether the extensions for filing the federal income tax returns operated as automatic extensions for filing the state income tax returns, notwithstanding M<small>ISS</small>. C<small>ODE</small> A<small>NN</small>. § 27-7-50.  Instead, the MDOR points out that the Debtor only recently obtained the IRS's Account Transcripts, as shown by the "request date" of April 5, 2016, which appears on the top of the pages.  Thus, the MDOR was unaware of the extensions granted by the IRS until the Debtor produced the Account Transcripts, which was after the MDOR had filed the Summary Judgment Motion.  Apparently, Mississippi taxpayers are not required to attach a federal extension form to the Mississippi individual income tax return (but need only maintain proof that a federal extension to file was granted), so the MDOR was unaware of the IRS extensions when the Complaint was filed.  *See* M<small>ISS</small>. A<small>DMIN</small>. C<small>ODE</small> § 35.III.I.II.101.  The MDOR insists the Debtor should have disclosed the Account Transcripts earlier under Rule 7026 of the Federal Rules of Bankruptcy Procedure "so as to not expand the litigation."  (MDOR's Reply Br. at 1).  Based on the Account Transcripts, the MDOR now agrees with the Debtor that the state income tax returns for the tax years 2007 and 2008 were timely filed and that the tax debts for these same years are dischargeable.  (MDOR's Reply Br. at 2).

The Court concludes that the MDOR has failed to meet its summary judgment burden with respect to the 2007-2008 tax debts.  Given the extended due dates for the filing of the federal income tax returns and the absence of any evidence that extensions for the filing of the state income tax returns were denied, the Court further concludes that the Debtor is entitled to

summary judgment that the 2007-2008 tax debts are dischargeable. As noted previously, the Fifth Circuit has recognized that even in the absence of a cross-motion for summary judgment, a court may grant summary judgment *sua sponte* where the movant has sufficient notice and opportunity to present evidence on the same issue. *See Jensen v. Snellings,* 841 F.2d 600, 618 (5th Cir. 1998) (stating that district court may enter summary judgment against a non-movant where "facts dispositive of this issue were presented and argued at length to the district court, and the movant . . . had a full and fair opportunity to develop the record as to their duty to defend"). Here, summary judgment in favor of the Debtor is appropriate given the Account Transcripts and the MDOR's concession in the MDOR Reply Brief that unpaid taxes for the years 2007 and 2008 are dischargeable.

> ### 3.   Tax Evasion:  § 523(a)(1)(C)

As an alternative ground for the non-dischargeability of the 2010-2011 tax debts, the MDOR asserts that § 523(a)(1)(C) precludes the discharge of the Debtor's tax liability because the Debtor pled guilty to tax evasion for those years. Under § 523(a)(1)(C), a discharge under § 727 does not discharge a tax debt where the debtor "willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). The purpose of this provision is "to ensure that the Bankruptcy Code's 'fresh start' policy is only available to 'honest but unfortunate debtors.'" *United States v. Coney*, 689 F.3d 365, 371 (5th Cir. 2012). The "willful attempt" standard contains both a conduct requirement (that the debtor "attempted in any manner to evade or defeat [a] tax") and a mental state requirement (that the attempt was "willful"). *United States v. Stanley*, 595 F. App'x 314, 317-18 (5th Cir. 2014).

Where the debtor is financially able to pay taxes but chooses not to do so, the test to determine "willfulness" is whether "(1) the debtor had a duty under the law, (2) the debtor knew

he had that duty, and (3) the debtor voluntarily and intentionally violated that duty." *Bruner v. United States (In re Bruner)*, 55 F.3d 195, 197 (5th Cir. 1995). The third prong of the test is satisfied by either "an affirmative act or culpable omission that, under the totality of the circumstances, constituted an attempt to evade or defeat the assessment, collection or payment of a tax." *Coney*, 689 F.3d at 376.

The nonpayment of a tax alone usually is deemed insufficient to bar the discharge of a tax liability. *Bruner*, 55 F.3d. at 200. A debtor's failure to pay taxes when he had the ability to pay, however, may suggest willfulness. *Coney*, 689 F.2d at 378 n.4. Still, the ability to pay is only a factor in the analysis and not a necessary part of the determination. *Grothues v. IRS (In re Grothues)*, 226 F.3d 334, 339 (5th Cir. 2000).

As evidence that the Debtor willfully attempted to evade or defeat the income taxes for the 2010-2011 tax years, the MDOR largely relies on the Debtor's criminal conviction for tax evasion. Although the MDOR did not frame its argument as such, it essentially invokes the doctrine of collateral estoppel to bar the Debtor from relitigating the dischargeability of the 2010 and 2011 tax debts. The Debtor did not mention his criminal conviction in his Response or Debtor's Brief.

According to the Indictment, and Judgment of Conviction, the Debtor pled guilty to reporting state personal income tax due for the 2010 tax year of $4,178.00 and state personal income tax due for the 2011 year of $3,596.00 but never making any payment of such taxes in violation of MISS. CODE ANN. § 27-3-79. The Indictment reflects that the Debtor pled guilty to "willfully, unlawfully, feloniously, purposely and knowingly attempt[ing] in any manner to evade or defeat a tax imposed by the [MDOR]." (MDOR's Ex. G). In his plea agreement, the

Debtor agreed to pay restitution of $7,774.00 at the rate of $150.00 per month beginning November 2015. (*Id*.).

The Court finds that the Indictment and Judgment of Conviction constitute sufficient summary judgment evidence to satisfy the "willfulness" standard for non-dischargeability in § 523(a)(1)(C). *See Grothues*, 226 F.3d at 339 (refusing to adopt a holding that might encourage "unscrupulous debtors to use bankruptcy law as a shield against enforcement of criminal proceedings promises they had *no* intention of keeping, but nevertheless made, in order to gain a more favorable plea agreement/sentence"). The elements of the criminal action against the Debtor are virtually identical to the "willfulness" standard for non-dischargeability under § 523(a)(1)(C). The Court, therefore, finds that collateral estoppel bars the Debtor from relitigating whether he "willfully attempted in any manner to evade or defeat such tax." Accordingly, the Court further finds that the MDOR is entitled to summary judgment that the unpaid taxes for the 2010-2011 years are non-dischargeable under § 523(A)(1)(C).

## Conclusion

The Court concludes that the MDOR is entitled to summary judgment that the tax debts owed by the Debtor for the tax periods 2009-2012 are non-dischargeable. The Court also concludes, *sua sponte*, that the Debtor is entitled to summary judgment that the tax debts owed by the Debtor for the tax periods 2007-2008 are dischargeable. No further issue remains in the Adversary. Therefore, a separate final judgment consistent with this Opinion will be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##